| | |
|---|---|
| In re: | Chapter 7 |
| STREAMLINE SOLUTIONS LLC, *et al.,* | Case No. 25-13595 (AMC) |
| Debtors. | (Jointly Administered) |

**OBJECTION AND OPPOSITION OF CREDITOR, EVANSTON INSURANCE COMPANY, TO MOTION OF CREDITORS, NICKOLAS AUGER, DAVID BUTERA, DANIEL & CLARISA KIRK, AND MATTHEW SELBOVITZ, FOR RELIEF FROM THE AUTOMATIC STAY**

**PRELIMINARY STATEMENT**

This objection and opposition is filed on behalf of creditor, Evanston Insurance Company ("Evanston"), in response to the Motion for Relief from the Automatic Stay of creditors, Nickolas Auger, David Butera, Daniel & Clarisa Kirk, and Matthew Selbovitz (collectively, the "Crease Street Plaintiffs"). The Crease Street Plaintiffs seek relief from the automatic stay to pursue claims against Evanston as a purported garnishee in the Underlying Actions (as defined below). Evanston submits this opposition and objection to advise this Court that lifting the stay would strain the Debtor's[1] estate and serve no practical or legal purpose.

In their motion, the Crease Street Plaintiffs fail to disclose that Evanston has asserted a New Matter against the Debtor in the garnishment proceedings. Lifting the stay would revive that claim and require the Debtor to defend itself at the estate's expense while these bankruptcy proceedings are pending. Moreover, contrary to the Crease Street Plaintiffs' assertions, lifting the

---

[1] Debtor Streamline Solutions, LLC ("Streamline") was named as a defendant along with Nineteenth Street Development, LLC ("Nineteenth Street") by the Crease Street Plaintiffs in the Underlying Actions. For purposes of this submission the "Debtor" is defined as Streamline Solutions, LLC.

stay will not result in any recovery for them because Evanston has no duty to indemnify the Debtor for the judgments awarded in Underlying Actions, as confirmed by the documents filed on the record and produced to both the Crease Street Plaintiffs and the Debtor. As the Crease Street Plaintiffs have been made aware prior to as well as during the garnishment proceedings, Evanston has no duty to pay the judgments in the Underlying Actions because: (1) the damage to the properties manifested before the Evanston Policy (defined below) periods incepted; (2) the damages awarded were not because of "property damage" caused by an "occurrence" as required by the Evanston Policy; (3) a number of exclusions in the Evanston Policy bar coverage for the damages awarded, in whole or in part.

The Crease Street Plaintiffs have no viable garnishment claim and no pathway to recovery against Evanston. Accordingly, lifting the stay would serve no purpose and provide no benefit to any party. Instead, it would merely revive litigation against the Debtor in the form of a New Matter that is pending in the stayed garnishment proceedings and require the Debtor to defend itself against Evanston without sufficient resources, imposing avoidable costs and burdens on the estate, parties involved, and the court. Such a result runs counter to the fundamental principles of judicial economy and efficient case administration.

## FACTS

In the interest of brevity, Evanston attaches a copy of its Answers to the Revised Interrogatories to Garnishee and New Matter, which were filed with the Philadelphia Court of Common Pleas on March 11, 2025 in the garnishment action, and are incorporated herein by reference. These materials provide the Court with the universe of documents and related facts necessary to understand why Evanston has no duty to pay the judgements obtained in the Underlying Actions by the Crease Street Plaintiffs. See Ex. A.

## I.   THE EVANSTON POLICIES[2]

Evanston issued a primary Commercial General Liability (CGL) policy to first named insured "Lion Construction, LLC DBA Streamline Solutions, LLC, 1508-22 Masher Street LLC" policy number 3C42330 in effect between November 1, 2017 to November 1, 2018 (for purposes of this submission the "Evanston Policy").  Evanston also issued a primary CGL policy to first named insured "Lion Construction Management, LLC," policy number MKLV7PBC000002 in effect between November 1, 2018 to November 1, 2019.  Evanston issued four excess liability policies that were in effect between November 1, 2016 to November 2020, as follows (collectively, "2016-2020 Evanston Excess Policies")[3]:

- Policy number MKLVIEULI00396 issued to "Lion Construction, LLC/Streamline Solutions LLC," in effect between November 1, 2016 to November 1, 2017.

- Policy number MKLV1EUL101129 issued to "Lion Construction, LLC,"[4] for the policy period November 1, 2017 to November 1, 2018.

- Policy number MKLV7EUL100475 issued to "Lion Construction, LLC," for the policy period November 1, 2018 to November 1, 2019.

- Policy number MKLV7EUL101098 issued to Lion Construction Management, LLC, for the policy period November 1, 2019 to November 1, 2020.

## II.   THE UNDERLYING ACTIONS

The Crease Street Plaintiffs filed four separate civil actions against defendants Streamline and/or Nineteenth Street which were then consolidated for purposes of trial (collectively the

---

[2] All of the policies discussed in this subsection are collectively referred to as the "Evanston Policies."

[3] Evanston has not received any information that would trigger coverage under the Evanston Excess Policies or any subsequent policy periods.

[4] This policy and the remaining excess policies provide that you are an insured if you qualify as an insured under the "underlying insurance."

"Underlying Actions"),[5] each alleging that Streamline and Nineteenth Street improperly constructed their homes leading to water infiltration, including mold growth (collectively, the "Project"). The Underlying Actions alleged claims for (I) Breach of Contract; (II) Breach of Express Warranty; (III) Breach of Implied Warranty of Workmanlike Construction; (IV) Breach of the Implied Warranty of Habitability; (V) Negligence; (VI) Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law; (VII) Negligent Misrepresentation; (VIII) Breach of Contract.

The Underlying Actions proceeded to trial in June 2023.[6] On June 16, 2023, the jury awarded compensatory damages. However, the jury did not rule on Plaintiffs' UTPCPL claims. See Ex. A, Ex. 14. On October 31, 2024 the Philadelphia Court of Common Pleas separately awarded damages in connection with the UTPCPL claims in each of the Underlying Actions. See Ex. A, Ex. 15. As related to the compensatory damages awarded for UTPCPL violations, the Philadelphia Court specified that "[b]ecause these compensatory damages are duplicative of those awarded in the companion jury trial, they are not owed by Defendants here for each of the four Plaintiffs." Id. A Praecipe to Enter Judgments in the Underlying Actions was filed by Plaintiffs on November 22, 2025.

***Notably, the Crease Street Plaintiffs' Complaints, discovery, and trial testimony in the***

---

[5] They are: (1) Kirk v. Streamline Solutions, LLC, case ID 190901353, for property located at 1371 Crease Street, Philadelphia, PA; (2) Auger v. Streamline Solutions, LLC, case ID 190901351, for property located at 1367 Crease Street, Philadelphia, PA; (3) Butera v. Streamline Solutions, LLC, case ID 190901268, for property located at 1373 Crease Street, Philadelphia, PA; and (4) Selbovitz v. Streamline Solutions, LLC, case ID 190401575, for property located at 1369 Crease Street, Philadelphia, PA.

[6] Evanston filed a Petition to Intervene for the sole purpose of submitting special jury interrogatories that would allow the jury to separate potentially covered damages from damages that are more clearly excluded from coverage under the Policy. The petition was denied by the Court on June 8, 2023.

***Underlying Actions revealed that the damage at each property manifested <u>prior to the inception</u>***

***of the Evanston Policies:***

- **<u>Auger</u>:** Plaintiff Auger first became aware of multiple deficiencies at the property, including inadequate sealing of windows and doors and evidence of water infiltration, in ***May 2015***. <u>See</u> Ex. A, Ex. 1, Auger Compl. ¶¶ 9, 13, 59; Ex. 2, Apex Report at 2, 5, 9; Ex. 3, Trial Tr. (June 13, 2023) at 16:4–16.

- **<u>Selbovitz</u>:** Plaintiff Selbovitz first began experiencing water intrusion issues two or three weeks after taking possession of the property in ***May-June 2015***. <u>See</u> Ex. A, Ex. 4, Selbovitz Compl. ¶¶ 1, 13, 59; Ex. 5, Trial Tr. (June 6, 2023) Selbovitz testimony, at 129:12–15. Mr. Selbovitz further testified that he reported these issues in mid-2015 after recognizing prior signs of leakage, and that despite repair efforts, the problems persisted into 2016, prompting additional inspections addressing ongoing water intrusion throughout the home. <u>See id</u>. at 129–132, 129:24–130:6, 140–141, 143:23–144:25, 180:1–3; <u>see also</u> Ex. A, Ex. 6 at 1.

- **<u>Kirk</u>:** Plaintiffs Daniel and Clarisa Kirk allege that they purchased and took possession of the home in May 2015 and discovered water intrusion issues shortly thereafter. <u>See</u> Ex. A, Ex. 7, Kirk Compl. ¶¶ 1, 9, 13, 59, 25. As Mrs. Kirk testified, the problems manifested almost immediately in ***early July 2015***. Ex. A, Ex. 8, Trial Tr. (June 5, 2023) at 88:13–18. The Kirks promptly reported the issue in July 2015 and, although Streamline made multiple repair attempts—including applying sealant and addressing improper window installation—the water intrusion persisted. <u>See id.</u> at 91:1–4, 96:4–7, 98:23–99:1.

- **<u>Butera</u>:** Plaintiff Butera purchased and took possession of the home in ***June–July 2015***, following inspections that identified potential water intrusion and stucco-related deficiencies prior to closing. <u>See</u> Ex. A, Ex. 9, Butera Compl. ¶¶ 1, 9, 57, 59, 64. A June 19, 2015 inspection report specifically noted that "[l]ocalized damage of the stucco exterior wall should be repaired," and identified leaks in the basement and water staining at the master bedroom window. <u>See</u> Ex. A, Ex. 10, Trial Tr. (June 8, 2023) at 90:9–12; Ex. 11 at 3. Consistent with these findings, on June 21, 2015, Mr. Butera's wife sent an email to their realtor outlining conditions that needed to be addressed before proceeding with the purchase, including repair of stucco damage, investigation of potential hidden moisture issues, and further evaluation of water staining at the windowsill. Issues remained ongoing for months thereafter. In 2018, Mr. Butera noticed leaks in his home. <u>Id.</u> at 101:5-6. As testified, issues at the

> Butera Home worsened with time and leaks appeared in the same locations first noticed in 2015. <u>See</u> Ex. A, Ex. 10, Excerpt Trial Transcript, June 8, 2023, 104:13-105:1-15; 108:18-109:6.

### III. EVANSTON PROVIDED STREAMLINE WITH A DEFENSE IN THE UNDERLYING ACTIONS SUBJECT TO A RESERVATION OF RIGHTS AND LATER DISCLAIMED ANY DUTY TO PAY THE JUDGMENTS

Evanston provided a defense to Streamline (the Debtor herein) and Nineteenth Street (not a debtor or party to the bankruptcy proceedings) in the Underlying Actions under policy no. 3C42330, in effect between November 1, 2017 to November 1, 2018 pursuant to a reservation of rights, beginning with a July 14, 2020 reservation letter and supplemented by additional reservations issued in December 2022 and September 2023. <u>See</u> Ex. A, Exs. 22–26.

Notably, the policy provides that Evanston "will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies." As specified, the insurance applies to "property damage": (1) caused by an "occurrence"; and (2) that "occurs during the policy period." <u>See</u> Ex. A, Ex. 16.[7]

Moreover, even if the policy period and other insuring agreement requirements had been satisfied—which they have not— the Evanston Policy includes a number of exclusions that would bar coverage, in whole or in part, for the damages awarded in the Underlying Actions including:

- Excludes coverage for contractual liability, such as for breach of contract and breach of express or implied warranties.

- Excludes from coverage claims for "Damage to Property" that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

- Excludes from coverage claims for Damage to "Your Product" arising out of it or any part of it.

- Excludes from coverage claims for Damage to "Your Work" arising out of it or any part of it and included in the "products-completed operations hazard."

---

[7] The Evanston Policies are subject to a per occurrence deductible as noted in the endorsement titled "Deductible Endorsement," MEGL 0048 03 13.

- Excludes from coverage claims for Damage to Impaired Property or Property Not Physically Injured.

- The 2017-2018 Evanston Primary Policy also provides that this insurance does not apply to damage in any way involving "fungi", bacteria, organic pathogens or bio-organic growth.

- Includes an endorsement titled *Exclusion - Exterior Insulation and Finish System"* which bars coverage for "property damage" "arising out of, caused by, or attributable to" whether in whole or in part," to "design, manufacture, construction, fabrication, preparation, distribution and sale, installation, application, maintenance or repair, including remodeling, service, correction or replacement, of any "exterior insulation and finish system."

- Excludes coverage for "property damage" that "[f]irst occurred, first began to occur, or is alleged to have first occurred…prior to the effective date of this policy" in an endorsement titled "Exclusion – continued or progressive injury or damage."

- Does not provide coverage for punitive, exemplary, multiplied or other non-compensatory damages, including fines, penalties or sanctions imposed by law.

Even if they were implicated—which they were not—the Evanston Excess Policies also include a number of exclusions that bar coverage in whole or in part and applicable to the judgments issued in the Underlying Actions. See Ex. A, Ex. 16 - 21.

Following the jury verdict in June 2023, Evanston issued a partial denial of coverage in August 2023. On February 15, 2024, Evanston formally disclaimed coverage for the jury-awarded damages based on information developed at trial demonstrating that the alleged damages first manifested *in 2015* – prior to the inception of any Evanston policy period on November 1, 2017—while continuing to reserve its rights as to the remaining claims (i.e. claims for UTPCPL violations) for which the court had yet to issue a verdict . See Ex. A, Exs. 25, 27–28. After verdicts on the remaining claims were entered, in February and again in March 2025, Evanston issued formal disclaimers of indemnity coverage to both Streamline and Nineteenth Street as to all damages awarded. See Ex. A, Exs. 29–30.

## IV. CREASE STREET PLAINTIFFS' INTERROGATORIES TO GARNISHEE

On February 10, 2025, the Crease Street Plaintiffs filed a Praecipe to Issue a Writ of Execution, together with Interrogatories in Attachment to Garnishee directed to Evanston in the Underlying Action. They served Revised Interrogatories in Attachment to Garnishee directed to Evanston on February 12, 2025, to which Evanston responded on March 11, 2025. In addition to its interrogatory responses, Evanston alleged a New Matter Pursuant to Pa. R. Civ. P. 3145(b)(2) against Streamline and Nineteenth Street, asserting that it has no responsibility to pay for the judgments issued since no coverage exists because: (1) the damages first manifested prior to the Evanston policy periods; (2) the jury award was not based on an "occurrence," but instead on breach of contract, breach of express and implied warranties, and deceptive trade practices; (3) damages arising from faulty construction do not constitute an "occurrence"; (4) multiple policy exclusions independently bar coverage; and (5) punitive damages are excluded.[8]

In the same submission, Evanston included a New Matter against Streamline seeking judgment in its favor, setting forth its position that no coverage is available, supported by extensive documentation, including the underlying complaints, trial testimony and exhibits, coverage correspondence issued to Streamline and Nineteenth Street, and the applicable Evanston Policies. The Crease Street Plaintiffs filed a Reply to the New Matter on April 7, 2025.

Despite Evanston's comprehensive submission, the Crease Street Plaintiffs subsequently served Requests for Production and a Notice of Deposition for Evanston's corporate representative on April 15, 2025. In response, Evanston filed a Motion for Protective Order on May 14, 2025

---

[8] Under Pennsylvania law, garnishment interrogatories effectively function as a complaint, and the garnishee's answer and "New Matter" functions as a responsive pleading and an opportunity to assert counterclaim or crossclaims. Pa. R. See 231 Pa. Code 3145. Evanston availed itself of this procedure to assert a claim against the Debtor in the form of New Matter asserting that there is no coverage, and thus, the Debtor is not entitled to any proceeds under the Evanston Policy.

pursuant to Pa. R. Civ. P. 4011 and 4012 because the documents and information requested were wholly unrelated to the subject matter of the garnishment proceedings and beyond the scope of the applicable rules. See Ex. B (without exhibits). The Crease Street Plaintiffs filed an opposition on June 4, 2025.

The garnishment proceedings were stayed on January 13, 2026 in light of the bankruptcy filing in this matter. On April 9, 2026, the Philadelphia Court denied Evanston's Motion for a Protective Order without prejudice due to the stay, permitting the parties to refile once the matter returns to active status.

## ARGUMENT

**I. RESUMING THE GARNISHMENT PROCEEDINGS AGAINST EVANSTON WILL IMPOSE A BURDEN ON THE DEBTOR AND WILL IMPACT THE ESTATE**

Section 362(d)(1) permits a bankruptcy court to modify the stay for "cause." 11 U.S.C. § 362(d). "Cause," which the Bankruptcy Code does not define, is an intentionally broad and flexible concept which must be determined on a case-by-case basis. In re Schaffer, 597 B.R. 777, 789 (Bankr. E.D. Pa. 2019). As a general rule, unsecured creditors are entitled to relief from the automatic stay only in rare or extraordinary circumstances. Id. (citing In re Chan, 355 B.R. 494, 499 (Bankr. E.D. Pa. 2006)); see also In re Brown, 311 B.R. 409, 413 (E.D. Pa. 2004) (unsecured creditors are generally entitled to relief from the automatic stay only in extraordinary circumstances).

Ultimately, the decision whether to lift the stay lies within the Court's discretion, guided by consideration of the relevant factors, including whether modification would permit litigation to proceed in a non-bankruptcy forum. See, e.g., In re Containership Co. (TCC) A/S, 466 B.R. 219, 225 (Bankr. S.D.N.Y. 2012); In re Project Orange Assocs., LLC, 432 B.R. 89, 103 (Bankr. S.D.N.Y. 2010).

When, as here, an unsecured creditor seeks to continue litigation in another forum, courts apply a balancing test, allowing for modification of the stay only when no great prejudice to either the debtor or the estate would result and where the hardship to the plaintiff caused by the continuance of the stay outweighs the hardship to the debtor caused by the stay modification. See In re Chan, 355 B.R. at 498; In re Glunk, 342 B.R. 717, 740 (Bankr. E.D. Pa. 2006). Stated another way, courts have generally allowed such modifications of a stay *only* where "no great prejudice" to the debtor or the estate would result and where the balance of hardships decisively favored the movant. Johns-Manville Corp. v. Asbestos Litig. Group (In re Johns-Manville Corp.), 26 B.R. 420, 433 (Bankr. E.D.N.Y. 1983); In re Causa, 93 B.R. 409, 411 (Bankr. E.D. Pa. 1988); In re Stranahan Gear Co., Inc., 67 B.R. 834, 838 (Bankr. E.D. Pa. 1986). While courts have granted such relief where a creditor seeks to proceed in another forum solely to recover against a debtor's prepetition insurance, the debtor's involvement in those cases was minimal — typically limited to cooperation with an insurer — and estate administration was not materially affected. See In re Chan, 355 B.R. at 498; In re Johns-Manville Corp., 26 B.R. 420, 433 (Bankr. E.D.N.Y. 1983); In re Holtkamp, 669 F.2d 505 (7th Cir. 1982). Conversely, courts deny relief where the issues can be fully resolved in the bankruptcy court and no special circumstances tip the balance of hardships in favor of the movant. In re Chan, 355 B.R. at 498.

Here, the Crease Street Plaintiffs improperly characterize their request as just a limited effort to proceed against Evanston. In reality, however, the garnishment proceeding includes a pending New Matter asserted directly against the Debtor, Streamline. Granting the Crease Street Plaintiffs' motion would therefore revive stayed claims against the Debtor, require its active

-10-

participation in litigation, and impose immediate and substantial defense burdens.[9]  This would undermine the protection of the automatic stay, divert estate resources, and interfere with the orderly administration of the bankruptcy case.  Under these circumstances, the balance of hardships weighs decisively *against* stay relief.  Any asserted hardship to the Crease Street Plaintiffs is outweighed by the concrete and significant burden on the Debtor and its estate. Accordingly, cause does not exist to modify the automatic stay, and the motion should be denied.

## II.  PLAINTIFFS HAVE NO VIABLE PATH TO RECOVERY AGAINST EVANSTON BECAUSE EVANSTON HAS NO DUTY TO PAY THE JUDGMENTS IN THE UNDERLYING ACTIONS

The Crease Street Plaintiffs submit that they would be prejudiced if their motion is not granted.  However, since Evanston has no duty to pay the judgments in the Underlying Action, no path of recovery against Evanston is available for the Crease Street Plaintiffs.  Thus, permitting the Crease Street Plaintiffs to proceed would not advance any recovery, it would serve only to burden the Debtor and the estate.

Courts routinely deny relief from the automatic stay where the proposed litigation would be futile, confer no benefit upon the estate, and run counter to the interests of judicial economy. See, e.g. In re Sonnax Indus., Inc., 907 F.2d 1280 (2d Cir. 1990) (affirming denial of stay relief where continuation of litigation would not advance resolution and would interfere with the bankruptcy case).  Thus, in evaluating "cause" for potential modification of the stay, the court may properly consider dispositive legal issues, including the absence of coverage, where such issues demonstrate that allowing the requested relief would be futile.

---

[9] While Evanston has provided a defense to Streamline in the Underlying Actions brought by the Crease Street Plaintiffs, any defense costs associated with defending claims by Evanston would now be borne by Streamline (the Debtor) and its estate.

The Crease Street Plaintiffs have been aware that the judgments are not covered by under the Evanston Policies for years. First, damages awarded in the Underlying Actions manifested *in 2015* — well before the inception of Evanston's earliest policy period of November 1, 2017 to November 1, 2018. The Crease Street Plaintiffs' own trial testimony confirms manifestation in May 2015 (Auger), June 2015 (Butera), and July 2015 (Kirk and Selbovitz), placing all claimed damages outside any applicable policy period and precluding coverage on that basis alone. In addition to the manifestation of damage predating the Evanston Policy periods, the underlying verdicts do not award damages caused by an "occurrence." Rather, damages were awarded for breach of contract, breach of express and implied warranties, and violations of the UTPCPL, none of which include "property damage" caused by an "occurrence" as required by the Evanston Policy to qualify for coverage. Damages were also awarded for faulty workmanship, which does not constitute an "occurrence" under Pennsylvania law.

Moreover, even if the damages awarded somehow fell within the initial scope of coverage provided by the Evanston Policies, which they do not, multiple independent exclusions in the Evanston Policies further bar coverage. Among other things, the policies exclude: (1) damages arising from fungi, mold, or bacteria, including water infiltration leading to mold; (2) damages related to exterior insulation and finish systems (EIFS); (3) property damage that first occurred prior to the policy period; (4) contractual liability; and (5) property damages to the insured's own work or product. There is no coverage for the judgment under the 2018–2019 Policy for the same reasons. As to the Evanston Excess Policies 2016–2020, they have not been triggered because the underlying insurance was not exhausted and the damages first manifested prior to their policy periods. Moreover, those policies also contain similar exclusions independently barring coverage. Finally, Evanston fully reserved its right to deny indemnity under the Evanston Policies for any

judgment or settlement involving damages not covered by the policies, and then properly asserted this right based on the damages awarded.

Thus, because there is no duty to pay the judgments under the Evanston Policies, the Crease Street Plaintiffs request to lift the stay to pursue such recovery is entirely futile. Granting such a request would undermine judicial efficiency and impose unnecessary burdens on all parties involved.

## CONCLUSION

For the above noted reasons, the Crease Street Plaintiffs have not established "cause" to warrant modification of the automatic stay. Allowing the litigation to proceed would unnecessarily burden the Debtor and its estate by reviving active claims against the Debtor. Moreover, since Evanston has no duty to pay the judgments in the Underlying Actions under any of the Evanston Policies, there is no viable path to recovery for the Crease Street Plaintiffs through the proposed litigation. As such, lifting the stay would not only fail to advance the Crease Street Plaintiffs' ability to recover, but would also unnecessarily require the Debtor to expend resources participating in litigation that cannot result in payment of insurance proceeds.

What is more, considerations of judicial economy also weigh against the requested relief. Permitting the litigation to proceed in another forum, despite the absence of coverage for the judgments, would result in unnecessary expenditure of judicial and party resources where no recovery is ultimately available.

Accordingly, Evanston respectfully requests that the Court deny the Crease Street Plaintiffs' Motion for Relief from the Automatic Stay.

Respectfully submitted,

**WHITE AND WILLIAMS LLP**

*/s/ Edward M. Koch*

BY:   Edward M. Koch, Esquire
Laura Rossi, Esquire
Pa. Id. Nos. 76337; 322763
1650 Market Street
One Liberty Place, Suite 1800
Philadelphia, PA  19103
215-864-6319/6366

Christopher F. Graham, Esq.
810 Seventh Avenue, Suite 500
New York, NY 10019
212-714-3066

*Attorneys for Creditor,*
*Evanston Insurance Company*

Dated: June 3, 2026