**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **In re:** | : | **CHAPTER 7** |
| | : | |
| **STREAMLINE SOLUTIONS, LLC, *et al.*** | : | **BANKRUPTCY NO. 25-13595 (AMC)** |
| | : | |
| **Debtors** | : | **(*Jointly Administered*)** |
| | : | |

**DECLARATION OF LYNN E. FELDMAN, CHAPTER 7 TRUSTEE, IN SUPPORT OF APPROVAL OF SETTLEMENT AGREEMENT AND MUTUAL RELEASE BETWEEN THE TRUSTEE AND MICHAEL STILLWELL; COULBEE, LLC; 1300 AMERICAN STREET, LLC; SOZ DE AVE OFFICE OWNER, LLC; PROCESS CONTRACTING, LLC; CORNER PROPERTY GROUP, LLC; ENDURING DEVELOPMENT, LLC AND CVCM, LLC**

I, Lynn E. Feldman, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 as follows:

1. I am a Chapter 7 Panel Trustee for the United States Bankruptcy Court in the Eastern District of Pennsylvania.

2. I have been a Chapter 7 Panel Trustee for more than twenty (20) years.

3. I have been appointed as a Chapter 7 Trustee in thousands of Chapter 7 bankruptcy cases.

4. I have administered numerous asset cases as a Chapter 7 Trustee.

5. I submit this Declaration in support of the Motion of Lynn E. Feldman, Chapter 7 Trustee, for Entry of an Order Approving Settlement Agreement and Mutual Release Between the Trustee and Michael Stillwell; Coulbee, LLC; 1300 American Street, LLC; SOZ DE Ave Office Owner, LLC; Process Contracting, LLC; Corner Property Group, LLC; Enduring Development, LLC and CVCM, LLC Pursuant to Fed. R. Bankr. P. 9019(a) and 11 U.S.C. § 105(a) (the "9019 Motion").

6. On September 9, 2025, I was appointed as the Chapter 7 Trustee for the bankruptcy

estates (collectively, the "Estates") of Streamline Solutions, LLC; Streamline Construction Management, LLC; Streamline Group, LLC; Lion Construction, LLC; Lion Construction Management, LLC; Streamline Philly Construction, LLC; Streamline Realty, LLC; Streamline Sales and Marketing, LLC; Streamline Residential Construction, LLC; Streamline Partners, LLC and STL Holdings I, LLC (collectively, the "Debtors").

7. After my appointment in the Debtors' Chapter 7 cases (the "Chapter 7 Cases"), I was made aware that the Estates may have causes of action against Michael Stillwell ("Mr. Stillwell"); Coulbee, LLC ("Coulbee") and related entities including, but not limited to, claims for veil piercing and alter ego liability (collectively, the "Causes of Action").

8. Mr. Stillwell owns all of the membership interests in the following debtor entities: (i) Streamline Solutions, LLC; (ii) Streamline Group, LLC; (iii) Lion Construction, LLC; (iv) Lion Construction Management, LLC; (v) Streamline Philly Construction, LLC; (vi) Streamline Realty, LLC; (vii) Streamline Partners, LLC and (viii) STL Holdings I, LLC.

9. Mr. Stillwell also owns all of the membership interests in Process Contracting, LLC ("Process") and Enduring Development, LLC ("Enduring").

10. Coulbee owns all of the membership interests in the following debtor entities: (i) Streamline Sales and Marketing, LLC; (ii) Streamline Residential Construction, LLC and (iii) Streamline Construction Management, LLC.

11. Coulbee also owns all of the membership interests in 1300 American Street, LLC ("1300 American"); SOZ DE Ave Office Owner, LLC ("SOZ"); Corner Property Group, LLC ("Corner") and CVCM, LLC ("CVCM", and together with Mr. Stillwell, Coulbee, Process, Enduring, 1300 American, SOZ, Process, and Corner, the "Stillwell Parties").

12. After lengthy good faith negotiations, on May 15, 2026, I entered into the

Settlement Agreement and Mutual Release (the "Agreement") with the Stillwell Parties. The Agreement is attached hereto as Exhibit "1" and made a part hereof.

13. On May 18, 2026, I filed the 9019 Motion.

14. The terms and conditions of the Agreement provide, *inter alia*, as follows:

(a) Settlement Amount. The Stillwell Parties shall pay the sum of $550,000.00 to the Trustee (the "Settlement Amount") to resolve the Settled Claims. The sum of $400,000.00 shall be paid by the Stillwell Parties to the Trustee within ten (10) days after the entry of the Final Order and the sum of $150,000.00 shall be paid by the Stillwell Parties to the Trustee within ninety (90) days after the entry of the Final Order. The Settlement Amount shall be paid to the Trustee via wire transfer with instructions to be provided by the Trustee's counsel.

(b) Release of Claims Against the Stillwell Parties. Upon the Effective Date and the receipt of the full Settlement Amount, the Debtors' Estates, the Trustee and their successors and assigns, hereby without further action, irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge the Stillwell Parties and their agents, attorneys, advisers, consultants, and their successors and assigns (the "Stillwell Released Parties") of and from any and all claims, causes of action, damages, debts, liabilities, obligations, suits, judgments, demands, promises, rights, and agreements, (including without limitation, rights of indemnity, contribution, payment, and reimbursement), liabilities, or causes of action, of any nature whatsoever, however acquired, whether arising in law, under any statute, regulation or rule (or otherwise), or at equity, whether known or unknown, suspected or unsuspected, asserted or retained, fixed or contingent, matured or unmatured, liquidated or unliquidated, foreseen or unforeseen, direct or derivative, existing or hereafter arising, in law, equity, statute, or otherwise, including, but not limited to, any of the foregoing arising under theories of contract, successor liability, tort, agency, unjust enrichment, alter ego, substantive consolidation, extension, veil piercing, equity and any and all fraudulent conveyance or transfer claims that were or could be brought by the Debtors' Estates, the Trustee, and their successors and assigns under state, federal or foreign law, including, but not limited to, any claims that have been brought, reduced to judgment or asserted which include any of the aforementioned relief and any claims that were or could have been asserted against the Stillwell Released Parties and any other action or proceeding from the beginning of time through and including the date of the Agreement including claims for punitive damages or attorneys' fees, provided however, the foregoing release shall not (i) release any obligation of the Stillwell Released Parties under the Agreement, or (ii) extend to any claim for breach of the terms of the

Agreement. Upon the Effective Date, the Debtors' Estates, the Trustee and their successors and assigns shall have relinquished any right to assert a claim of any sort against the Stillwell Released Parties.

(c) Release of Claims Against the Estates and the Trustee. Upon the Effective Date, the Stillwell Parties, on behalf of themselves and their successors and assigns, hereby without further action, irrevocably and unconditionally, fully, finally and forever waives, releases, acquits and discharges the Debtors' Estates, the Trustee, and her agents, attorneys, advisers, consultants, and their successors and assigns (the "Trustee Released Parties") of and from any and all claims, causes of action, damages, debts, liabilities, obligations, suits, judgments, demands, promises, rights, and agreements, (including without limitation, rights of indemnity, contribution, payment, and reimbursement), liabilities, or causes of action, of any nature whatsoever, however acquired, whether arising in law, under any statute, regulation or rule (or otherwise), or at equity, whether known or unknown, suspected or unsuspected, asserted or retained, fixed or contingent, matured or unmatured, liquidated or unliquidated, foreseen or unforeseen, direct or derivative, existing or hereafter arising, in law, equity, statute, or otherwise, including, but not limited to, any of the foregoing arising under theories of contract, successor liability, tort, agency, unjust enrichment, alter ego, substantive consolidation, extension, veil piercing, equity and any and all fraudulent conveyance or transfer claims that were or could be brought by the Stillwell Parties and their successors and assigns under state, federal or foreign law, including, but not limited to, any claims that have been brought, reduced to judgment or asserted which include any of the aforementioned relief and any claims that were or could have been asserted against the Trustee Released Parties and any other action or proceeding from the beginning of time through and including the date of the Agreement including claims for punitive damages or attorneys' fees, provided however, the foregoing release shall not (i) release any obligation of the Trustee Released Parties under the Agreement, or (ii) extend to any claim for breach of the terms of the Agreement. Upon the Effective Date, the Stillwell Parties and their successors and assigns shall have relinquished any right to assert a claim of any sort against the Trustee Released Parties.

(d) Assignment and Transfer of Subcontractor Claims. Upon the Effective Date, the Trustee, on behalf of the Estates, hereby assigns, transfers, conveys, and delivers to Mr. Stillwell, or his nominee, all right, title, and interest that the Trustee and the Estates have, if any, in the Subcontractor Claims. For purposes of the Agreement, "Subcontractor Claims" means any and all claims, causes of action, rights of recovery, demands, or remedies that the Trustee and the Estates have, if any, against any subcontractors, suppliers, vendors, or other third parties involved in any construction projects involving any of the Debtors, including without limitation any and all rights to proceeds that the Trustee and the Estates have, if any, from any

> prior or existing settlements, releases, or payments made by such subcontractors. This assignment is made AS IS, WHERE IS, without representation or warranty of any kind. Mr. Stillwell, or his nominee, shall have the sole and exclusive right to pursue, litigate, settle, or otherwise resolve the Subcontractor Claims that the Trustee and the Estates have, if any, in his sole discretion. Neither the Trustee nor the Estates shall retain any interest therein after the assignment.

*See*, Exhibit "1".

15. In my business judgment, I submit that the settlement reached with the Stillwell Parties is in the best interests of the Debtors' Estates and creditors. The Agreement is reasonable and supported by a sound business justification. Quite simply, the Agreement represents the most effective way to maximize value for the Estates.

16. I also submit that the four (4) *Martin* factors weigh heavily in favor of approving the Agreement as follows:

(a) Probability of Success in the Litigation. Litigating the Causes of Action against the Stillwell Parties would be difficult and hard to predict. I recognize that my arguments may not prevail and that prolonged litigation would be extremely costly and time-consuming. Creditors have been litigating against the Stillwell Parties for years and have yet to collect anything. I did not believe that I could retain special counsel to litigate the Causes of Action against the Stillwell Parties in light of the likelihood of success and the risk associated with such litigation. It is important to note that not one attorney reached out to me to be retained as my special counsel to litigate the Causes of Action against the Stillwell Parties. My attorney, Robert W. Seitzer, Esquire, spoke to two (2) law firms about potential retention by me. One declined and there was no follow-up by the other law firm. If the Causes of Action against the Stillwell Parties had significant merit, I would have thought that at least one attorney would have reached out to me. I also note that no one has offered me more than the Settlement Amount in connection to the

Causes of Action.

(b) The Likely Difficulties in Collection. This was the most important factor for me in deciding to enter into the Agreement. Creditors have been litigating against the Stillwell Parties for years and have yet to receive a penny from them. The Agreement was the result of extensive arms-length, good faith negotiations with the Stillwell Parties that included the production of numerous sensitive financial documents (the "Financial Documents") by the Stillwell Parties that are subject to the terms of the Stipulated Confidentiality and Protective Order entered by this Court on December 10, 2025 (the "Protective Order"). My accountants, Asterion, Inc., and counsel, Karalis PC, reviewed the Financial Documents, had numerous discussions with counsel for the Stillwell Parties, and personally met with Mr. Stillwell to go through the Financial Documents and ask specific questions as to the financial wherewithal of the Stillwell Parties. Despite the terms of the Protective Order, the Stillwell Parties authorized me to provide all of the Financial Documents to counsel for the homeowner creditors. Some of the Financial Documents are also included in the Expert Report by Stephen J. Scherf, CPA/ABV, CDBV, CVA filed with the Declaration of Stephen J. Scherf, CPA/ABV, CDBV, CVA in Support of Approval of the Agreement. The Financial Documents reflect that collection against the Stillwell Parties would be difficult, if not impossible.

(c) The Complexity of the Litigation involved, and the Expense, Inconvenience and Delay Necessarily Attending it. Potential litigation against the Stillwell Parties would be extremely complex and require substantial discovery, expert testimony and detailed briefing. As a result, the Trustee could expect to incur significant litigations costs and expenses. I did not believe that I could retain special counsel to litigate the Causes of Action against the Stillwell Parties in light of the likelihood of success and the risk associated with such litigation. As set forth

herein, not one attorney reached out to me or my counsel to be retained as my special counsel. In addition, not one penny has been collected against the Stillwell Parties despite years of litigation. Quite simply, given the amount at stake and the unpredictable nature of the potential litigation I believe that there is limited upside to pursuing litigation against the Stillwell Parties.

(d) The Paramount Interest of Creditors. As set forth herein, no creditor has been successful in any collection efforts against the Stillwell Parties despite years of litigation. The Settlement Amount will allow for an immediate distribution to the creditors of the Estates without any risk or further delay. The Settlement Amount will allow me to make a distribution to the Debtors' general unsecured creditors. My estimated Chapter 7 administrative claims are in the amount of approximately $150,000.00 which I will be able to pay in full from the Settlement Amount. There is one priority unsecured claim in the amount of $96,803.54 filed by the City of Philadelphia Law Department which I will be able to pay in full from the Settlement Amount. The general unsecured claim pool varies from case to case. That being said, the variation is between approximately $20,000,000 to $38,000,000. Generally, the claims of the homeowners are in the amount of approximately $20,000,000 and there is a guaranty obligation in the amount of approximately $18,000,000.[1] As such, I should have approximately $300,000 to distribute to general unsecured creditors which equates to a distribution of approximately 0.8% based upon a general unsecured claim pool of $38,000,000.

17. As set forth in the Agreement and as part of the Settlement Amount, I am assigning to Mr. Stillwell, or his nominee, all right, title, and interest that I and the Estates have, if any, in the Subcontractor Claims.

[1] The proof of claim filed by First Citizens Community Bank in the amount of $19,209,185.30 was tardily filed while the proofs of claim filed by Federal Reserve Bank of Boston and MS Facilities each in the amount of $18,248,726.04 are duplicative.

18. I assert that a sound business reason exists for the proposed transaction, the assignment has been proposed in good faith, the price is fair and reasonable and that accurate and reasonable notice has been provided of the transaction.

19. I acknowledge that Evanston Insurance Company ("Evanston") asserts that the Estates have no ownership interests in the Subcontractor Claims and also asserts that the Subcontractor Claims were assigned to it pursuant to certain liability insurance policies.

20. In light of this fact, I do not believe that the Subcontractor Claims have much value, if any.

21. The Subcontractor Claims are being assigned on an AS IS, WHERE IS basis without representation or warranty of any kind.

22. I believe that the Subcontractor Claims are property of the Estates.

23. Evanston acknowledged this fact by requesting that I abandon the Subcontractor Claims.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Lynn E. Feldman

Dated: September 8, 2026

# EXHIBIT "1"

# SETTLEMENT AGREEMENT AND MUTUAL RELEASE

This Settlement Agreement and Mutual Release (the "Agreement") is entered into as of Mar. 17, 2026 by and among (i) Lynn E. Feldman, solely in her capacity as the Chapter 7 Trustee (the "Trustee") for the bankruptcy estates (collectively, the "Estates") of Streamline Solutions, LLC; Streamline Construction Management, LLC; Streamline Group, LLC; Lion Construction, LLC; Lion Construction Management, LLC; Streamline Philly Construction, LLC; Streamline Realty, LLC; Streamline Sales and Marketing, LLC; Streamline Residential Construction, LLC; Streamline Partners, LLC and STL Holdings I, LLC (collectively, the "Debtors") and (ii) Michael Stillwell ("Mr. Stillwell"); (iii) Coulbee, LLC ("Coulbee"); (iv) 1300 American Street, LLC ("1300 American"); (v) SOZ DE Ave Office Owner, LLC ("SOZ"); (vi) Process Contracting, LLC ("Process"); (vii) Corner Property Group, LLC ("Corner"); (viii) Enduring Development, LLC ("Enduring") and (ix) CVCM, LLC ("CVCM", and together with Mr. Stillwell, Coulbee, 1300 American, SOZ, Process, Corner and Enduring, the "Stillwell Parties"). The Trustee and the Stillwell Parties shall be each referred to herein as a "Settling Party" and collectively, the "Settling Parties."

## RECITALS

### A. The Debtors' Bankruptcy Proceedings

WHEREAS, on September 8, 2025 (the "Petition Date"), each of the Debtors filed voluntary petitions for relief under chapter 7 of title 11 of the United States Code in the United States Bankruptcy Court for the Eastern District of Pennsylvania (the "Bankruptcy Court") at Case Nos. 25-13595 (AMC); 25-13596 (AMC); 25-13597 (AMC); 25-13598 (AMC); 25-13599 (AMC); 25-13600 (AMC); 25-13601 (AMC); 25-13602 (AMC); No. 25-13603 (AMC); 25-13604 (AMC) and 25-13605 (AMC) (collectively, the "Chapter 7 Cases").

WHEREAS, on September 9, 2025, the Trustee was appointed which appointment remains in effect.

WHEREAS, on December 4, 2025, the Bankruptcy Court entered an Order granting the joint administration of the Chapter 7 Cases.

### B. The Stillwell Parties

WHEREAS, Mr. Stillwell owns all of the membership interests in the following debtor entities: (i) Streamline Solutions, LLC; (ii) Streamline Group, LLC; (iii) Lion Construction, LLC; (iv) Lion Construction Management, LLC; (v) Streamline Philly Construction, LLC; (vi) Streamline Realty, LLC; (vii) Streamline Partners, LLC and (viii) STL Holdings I, LLC.

WHEREAS, Mr. Stillwell also owns all of the membership interests in Process and Enduring.

WHEREAS, Coulbee owns all of the membership interests in the following debtor entities: (i) Streamline Sales and Marketing, LLC; (ii) Streamline Residential Construction, LLC and (iii) Streamline Construction Management, LLC.

WHEREAS, Coulbee also owns all of the membership interests in 1300 American; SOZ; Corner and CVCM.

C. **<u>The Estates' Potential Causes of Action against the Stillwell Parties</u>**

WHEREAS, after the Petition Date, the Trustee advised the Stillwell Parties that the Estates had causes of action against them including, but not limited to, claims for veil piercing and alter ego liability (collectively, the "<u>Causes of Action</u>").

WHEREAS, the Stillwell Parties denied any potential liability in connection to the Causes of Action but also advised the Trustee that they did not have the financial wherewithal to pay any significant judgment that may be entered against them.

WHEREAS, as a result, the Trustee requested numerous documents relating to the financial affairs of the Stillwell Parties and the Settling Parties negotiated and executed a Stipulated Confidentiality and Protective Order (the "<u>Protective Order</u>") to facilitate the production of documents from the Stillwell Parties to the Trustee and her professionals.

WHEREAS, after the Protective Order was approved by the Bankruptcy Court on December 10, 2025, the Stillwell Parties produced numerous documents to the Trustee and her professionals about their financial condition.

D. **<u>Litigation against Subcontractors</u>**

WHEREAS, certain of the Debtors were general contractors in the business of developing residential real estate projects (collectively, the "<u>Projects</u>").

WHEREAS, Evanston Insurance Company ("<u>Evanston</u>") issued two (2) Commercial General Liability Policies (collectively, the "<u>Policies</u>") to certain of the Debtors.

WHEREAS, prior to the Petition Date, numerous homeowners who purchased homes from certain of the Debtors (collectively, the "<u>Homeowners</u>") initiated litigation against certain of the Debtors, and others, on account of, *inter alia*, defective construction (collectively, the "<u>Homeowner Litigation</u>").

WHEREAS, certain of the Debtors commenced litigation against certain of its subcontractors in connection to the Projects (the "<u>Subcontractor Claims</u>").

WHEREAS, pursuant to the Policies, Evanston asserts that any rights of recovery against third parties, such as subcontractors, were transferred to Evanston and that none of the Debtors have any interest in the Subcontractor Claims. The Settling Parties do not concede the validity of Evanston's assertions and nothing in this Agreement shall be construed as an admission or waiver with respect thereto.

WHEREAS, the Estates may possess certain claims, causes of action, or rights of recovery against subcontractors, suppliers, or other third parties involved in various construction projects (collectively, the "<u>Subcontractor Claims</u>") and to avoid the incurrence of continuing and substantial expenses and the significant uncertainties of litigation, the Settling Parties have decided to compromise, settle, forever resolve, and finally dispose of any and all claims, including those asserted, or which could have been asserted, whether known or unknown, among the Settling Parties relating in any way to the Causes of Action, the Subcontractor Claims or otherwise (collectively, the "<u>Settled Claims</u>").

NOW THEREFORE, in consideration of the foregoing recitals, and for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Settling Parties, intending to be legally bound, being duly authorized, hereby agree as follows.

## AGREEMENT

1. Recitals. Each of the recitals set forth above are incorporated herein, and the Settling Parties acknowledge that each recital is true and correct.

2. Effective Date and Related Matters. No later than five (5) business days after the execution and delivery of this Agreement, the Trustee shall file a motion in the Bankruptcy Court (the "Settlement Motion") to approve this Agreement under Fed. R. Bankr. P. 9019 and otherwise applicable bankruptcy law. This settlement shall be evidenced and implemented by this Agreement, the Settlement Motion, and the "Final Order" approving this Agreement. "Final Order" shall mean an order entered by the Bankruptcy Court which is unstayed and has become final and non-appealable. The "Effective Date" is a date (i) upon which the order approving this Agreement becomes a Final Order and (ii) the Settlement Amount (as hereinafter defined) has been paid in full by the Stillwell Parties to the Trustee.

3. Settlement Amount. The Stillwell Parties shall pay the sum of $550,000.00 to the Trustee (the "Settlement Amount") to resolve the Settled Claims. The sum of $400,000.00 shall be paid by the Stillwell Parties to the Trustee within ten (10) days after the entry of the Final Order and the sum of $150,000.00 shall be paid by the Stillwell Parties to the Trustee within ninety (90) days after the entry of the Final Order. The Settlement Amount shall be paid to the Trustee via wire transfer with instructions to be provided by the Trustee's counsel.

4. Release of Claims Against the Stillwell Parties. Upon the Effective Date and the receipt of the full Settlement Amount, the Debtors' Estates, the Trustee and their successors and assigns, hereby without further action, irrevocably and unconditionally, fully, finally and forever waive, release, acquit and discharge the Stillwell Parties and their agents, attorneys, advisers, consultants, and their successors and assigns (the "Stillwell Released Parties") of and from any and all claims, causes of action, damages, debts, liabilities, obligations, suits, judgments, demands, promises, rights, and agreements, (including without limitation, rights of indemnity, contribution, payment, and reimbursement), liabilities, or causes of action, of any nature whatsoever, however acquired, whether arising in law, under any statute, regulation or rule (or otherwise), or at equity, whether known or unknown, suspected or unsuspected, asserted or retained, fixed or contingent, matured or unmatured, liquidated or unliquidated, foreseen or unforeseen, direct or derivative, existing or hereafter arising, in law, equity, statute, or otherwise, including, but not limited to, any of the foregoing arising under theories of contract, successor liability, tort, agency, unjust enrichment, alter ego, substantive consolidation, extension, veil piercing, equity and any and all fraudulent conveyance or transfer claims that were or could be brought by the Debtors' Estates, the Trustee, and their successors and assigns under state, federal or foreign law, including, but not limited to, any claims that have been brought, reduced to judgment or asserted which include any of the aforementioned relief and any claims that were or could have been asserted against the Stillwell Released Parties and any other action or proceeding from the beginning of time through and including the date of this Agreement including claims for punitive damages or attorneys' fees, provided however, the foregoing release shall not (i) release any obligation of the Stillwell Released Parties under this Agreement, or (ii) extend to any claim for breach of the terms of this

Agreement. Upon the Effective Date, the Debtors' Estates, the Trustee and their successors and assigns shall have relinquished any right to assert a claim of any sort against the Stillwell Released Parties.

5. Release of Claims Against the Estates and the Trustee. Upon the Effective Date, the Stillwell Parties, on behalf of themselves and their successors and assigns, hereby without further action, irrevocably and unconditionally, fully, finally and forever waives, releases, acquits and discharges the Debtors' Estates, the Trustee, and her agents, attorneys, advisers, consultants, and their successors and assigns (the "Trustee Released Parties") of and from any and all claims, causes of action, damages, debts, liabilities, obligations, suits, judgments, demands, promises, rights, and agreements, (including without limitation, rights of indemnity, contribution, payment, and reimbursement), liabilities, or causes of action, of any nature whatsoever, however acquired, whether arising in law, under any statute, regulation or rule (or otherwise), or at equity, whether known or unknown, suspected or unsuspected, asserted or retained, fixed or contingent, matured or unmatured, liquidated or unliquidated, foreseen or unforeseen, direct or derivative, existing or hereafter arising, in law, equity, statute, or otherwise, including, but not limited to, any of the foregoing arising under theories of contract, successor liability, tort, agency, unjust enrichment, alter ego, substantive consolidation, extension, veil piercing, equity and any and all fraudulent conveyance or transfer claims that were or could be brought by the Stillwell Parties and their successors and assigns under state, federal or foreign law, including, but not limited to, any claims that have been brought, reduced to judgment or asserted which include any of the aforementioned relief and any claims that were or could have been asserted against the Trustee Released Parties and any other action or proceeding from the beginning of time through and including the date of this Agreement including claims for punitive damages or attorneys' fees, provided however, the foregoing release shall not (i) release any obligation of the Trustee Released Parties under this Agreement, or (ii) extend to any claim for breach of the terms of this Agreement. Upon the Effective Date, the Stillwell Parties and their successors and assigns shall have relinquished any right to assert a claim of any sort against the Trustee Released Parties.

6. Assignment and Transfer of Subcontractor Claims. Upon the Effective Date, the Trustee, on behalf of the Estates, hereby assigns, transfers, conveys, and delivers to Mr. Stillwell, or his nominee, all right, title, and interest that the Trustee and the Estates have, if any, in the Subcontractor Claims. For purposes of this Agreement, "Subcontractor Claims" means any and all claims, causes of action, rights of recovery, demands, or remedies that the Trustee and the Estates have, if any, against any subcontractors, suppliers, vendors, or other third parties involved in any construction projects involving any of the Debtors, including without limitation any and all rights to proceeds that the Trustee and the Estates have, if any, from any prior or existing settlements, releases, or payments made by such subcontractors. This assignment is made AS IS, WHERE IS, without representation or warranty of any kind. Mr. Stillwell, or his nominee, shall have the sole and exclusive right to pursue, litigate, settle, or otherwise resolve the Subcontractor Claims that the Trustee and the Estates have, if any, in his sole discretion. Neither the Trustee nor the Estates shall retain any interest therein after the assignment.

7. Bankruptcy Court Approval. This Agreement is contingent upon the entry of a Final Order of the Bankruptcy Court approving this Agreement. If this Agreement is not approved by the Bankruptcy Court, this Agreement shall be null and void and made without prejudice to the Settling Parties who shall be returned to their original factual and legal positions.

8. Destruction of Documents produced Pursuant to Protective Order. Within fifteen (15) days after the Effective Date, the Trustee and her professionals shall destroy all Confidential and Highly Confidential Material (as defined in the Protective Order) produced to them by the Stillwell Parties.

9. No Prior Transfer or Assignment. Each of the Settling Parties represents and warrants that it has not assigned, pledged, hypothecated or transferred any released matter or any right to consideration provided pursuant to this Agreement.

10. No Admission of Wrongdoing; Settlement Discussions. This Agreement and all negotiations, statements, and proceedings in connection herewith shall not be deemed to be evidence of, an admission of, or concession of any liability or wrongdoing by either Settling Party, and shall not be offered or received in any action or proceeding (except an action to enforce this Agreement), or be used in any way as an admission, concession, or evidence of any liability or wrongdoing of any nature by either Settling Party. This Agreement involves the settlement of disputed claims and nothing contained in this Agreement shall be construed as an admission by any Settling Party. Pursuant to Federal Rule of Evidence 408 and any applicable state rules of evidence, neither this Agreement, nor negotiations relating thereto, shall be admissible into evidence in any proceeding other than to prove the existence of this Agreement or in a proceeding to enforce the terms of this Agreement.

11. Settling Party Representations and Warranties. Each Settling Party hereby represents and warrants that at the time of execution of this Agreement: (a) such Settling Party and the signatory hereto has the power and authority to execute, deliver and perform this Agreement; (b) such Settling Party has taken all necessary actions to authorize the execution, delivery and performance of this Agreement; (c) this Agreement has been duly executed and delivered by such Settling Party and, subject to Bankruptcy Court approval, constitutes the legal, valid, and binding obligations of such Settling Party, enforceable against it in accordance with their respective terms; (d) such Settling Party's execution, delivery, and performance of this Agreement does not and will not conflict with, or constitute a violation or breach of, or constitute a default under any obligation of such Settling Party and will not violate any applicable law, or any order or decree of any court or government instrumentality applicable to such Settling Party; (e) such Settling Party is the holder of and has not transferred any released matter being released under this Agreement; and (f) such Settling Party has entered into this Agreement in reliance on its own independent investigation and analysis of the facts underlying the subject matter of this Agreement and with the advice of its own counsel, and no representations, warranties, or promises of any kind have been made directly or indirectly to induce it to execute this Agreement other than those that are expressly set forth in this Agreement.

12. Governing Law and Jurisdiction. This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania, without regard to the conflict of laws principles thereof. The Settling Parties acknowledge and consent to the exclusive jurisdiction of the Bankruptcy Court with respect to all matters relating to the interpretation and enforcement of the terms of this Agreement. If the Bankruptcy Court determines it lacks jurisdiction, then the Settling Parties consent to the exclusive jurisdiction of the United States District Court for the Eastern District of Pennsylvania.

13. Entire Agreement; Drafting. This Agreement contains the entire agreement between the Settling Parties and supersedes any prior agreements and understandings, written or

oral, between the Settling Parties pertaining to the subject matter hereof. No modification of this Agreement shall be binding or enforceable unless in writing and signed by the Settling Parties. The Settling Parties acknowledge that this Agreement was the product of negotiations between them and that any rule of construction that ambiguities are to be resolved against the drafting party shall not apply in the interpretation of this Agreement. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any one or more of the other provisions.

14. Attorneys' Fees, Costs and Expenses. Each of the Settling Parties agrees to bear its own costs and expenses, including attorneys' fees, arising out of the matters raised in this Agreement.

15. Binding on Successors. This Agreement shall be binding upon and inure to the benefit of the Settling Parties and their respective successors, representatives and assigns.

16. Execution. This Agreement may be executed in multiple counterparts, any of which may be transmitted electronically, and each of which should be deemed an original and all of which together shall constitute one and the same instrument. The signatories hereto may execute this Agreement by digital signature or other electronic means in lieu of an ink signature.

*[Remainder of page intentionally left blank]*

WHEREFORE, the undersigned have executed and delivered this Agreement on behalf of the Settling Parties as of the date first written above.

**Lynn E. Feldman, solely in her capacity as the Chapter 7 Trustee for the Bankruptcy Estates of Streamline Solutions, LLC; Streamline Construction Management, LLC; Streamline Group, LLC; Lion Construction, LLC; Lion Construction Management, LLC; Streamline Philly Construction, LLC; Streamline Realty, LLC; Streamline Sales and Marketing, LLC; Streamline Residential Construction, LLC; Streamline Partners, LLC and STL Holdings I, LLC**

By: Lynn E. Feldman
Title: Chapter 7 Trustee

**Michael Stillwell**

Michael Stillwell

**Coulbee, LLC**

By: Michael Stillwell
Title: President

**1300 American Street, LLC**

By: Michael Stillwell
Title: President of Coulbee, LLC, Managing Member

**SOZ DE Ave Office Owner, LLC**

By: Michael Stillwell
Title: President of Coulbee, LLC, Managing Member

**Process Contracting, LLC**

By: Michael Stillwell
Title: President of Coulbee, LLC, Managing Member

**Corner Property Group, LLC**

By: Michael Stillwell
Title: President

**Enduring Development, LLC**

By: Michael Stillwell
Title: President

**CVCM, LLC**

By: Michael Stillwell
Title: President of Coulbee, LLC, Managing Member